* Warden, J.
That growing corn will pass by common [439 ■deed of the lands whereon it grows, when no valid conversion of it into personalty is shown to have preceded the conveyance, can not be doubted. But whether such a conveyance always purports to •carry the title to growing crops, is another question. Many things may be in or on the ground when a deed is made, which the pafr'ties do not intend, and which no inflexible rule of law requires to fall under the conveyance. Such things are realty or personalty, .according to the intention of the parties. Lands may be sold while under lease; the 'lessee may have built, for manufacturing purposes or the like, with the right, as between landlord and tenant, to remove his buildings at the end of his term; in such a case, would a deed to a stranger purport to convey the buildings? It is certain, that when the vendor is in possession, and has himself made such erections on his lands, they would pass by his deed. Why not, then, construe the deed as pretending to convey them in every case ? And why admit proof outside of the deed, to show that the buildings were of the nature first supposed, and thus to manifest the understanding of the parties that they were not touched by the conveyance ? Is it not because such proof does not vary, enlarge, diminish, or contradict the deed, that it is admissible, as an answer to whatsoever complaint the vendee may prefer, on the ground that he has failed to get what his deed purports to convey ?
When we consider the case of a parol sale of growing corn to A, .and a subsequent deed of the land to B, while the corn continued to grow on the land, we must allow that proof of such sale, and notice of the fact given to B, when he took his deed, would estab *440, 441 Ifsh satisfactorily that the parties to the deed never intended to treat the corn as part of the realty, or as within the conveyance. Does the evidence of such intention vary or contradict the deed ? I think not. But these are all cases in which the vested, fixed rights of some third person are involved.
440] *However little favor should be shown to reservations made by the vendor by parol, when he is in possession, there must be some such reservations which are valid. It is, in such instances, a question of intent. Where that intent relates to things which may sometimes be treated as realty, and sometimes as personalty, the evidence of its manifestation in the conduct of the parties, or in their words, at the date of the deed, does not seem to alter, enlarge, or limit their written contract. For, as already observed, that contract does not necessarily embrace such things.
The case of a deed, then, is clearly distinguishable from that of many other written contracts. What such am instrument purports to convey, is to be known from the legal rules which have assigned to it a definite legal character. And when those rules are attentively considered, it will be found that the common words describing the ground conveyed, must always leave it an open question, whether the growing crops were intended as part of the thing, in which the property was to change. In the absence of any proof that any other valid disposition of them attended, or had preceded the deed, that instrument would certainly convey thorn. But proof of such other disposition would as certainly withdraw them from the conveyance, where the right of any third person interposed itself. Is there any reason for holding that other disposition void, because it was between the parties to the deed, and none other? If not, is such disposition void because the evidence of it is not carried into the writing of conveyance, on any presumption that all the agreement is therein witnessed?
This question is not without difficulty. Among the purely artificial rules of evidence, none much more commends itself to regard than that which forbids the parties to a solemn contract, reduced to the certainty of a writing, to alter, vary, limit, enlarge, or contradict what they have thus made certain, by the recollections of witnesses, attempting to show what the parties said before or at the time of signing the contract. If, in some instances, the strict ob-441] servanee of this *rule may work hardship, such cases are so exceptional, and the reason of the rule is so evident, that nothing *442 less than the caution of a chancellor can make a safe departure from, it, to correct or set aside the solemn evidence of what the parties have agreed or declared.
From the wise policy of that rule of evidence we are not disposed to depart. But, after a careful examination of the question, and notwithstanding some contrary opinions elsewhere, we have felt it our duty to respect the common understanding of our people on this subject. Custom in Ohio, if not in most of the states, treats-growing crops as personalty, even where the strict law laid down by some of the courts would not allow it to assume that character. It would not be difficult to establish that growing .wheat, corn, and the like, are generally looked upon as though severed from the land, when a conveyance of the latter is made. On this subject, a section in G-reonleaf s Evidence, 337, deserves attention : “ Upon the same principle, parol evidence of usage or custom is admissible ‘to annex incidents,’ as it is termed; that is, to show what things are customarily treated as incidental and accessorial to the principal thing which is the subject of the contract, or to which the instrument relates. Thus it may be shown by parol that a heriot is due, by custom, on the death of a tenant for life, though it is not expressed in the lease. So a lessee by deed may show that, by the custom of the country, he is entitled to an away-going crop, though no such right is reserved in the deed. This evidence is admitted on the principle that the parties did not intend to express in writing the whole of the contract by which they were to be bound, but only to make their contract with reference to the known and established usages and customs relating to the subject-matter. But, in all cases of this sort, the rule for admitting the evidence of usage or custom must be taken with this qualification, that the evidence be not repugnant to, or inconsistent with, the contract; for otherwise it would not go to interpret and explain, but to contradict that which is written. This rule does not add new terms to the contract, *which, as already shown, can not be done; but it shows the [442' full extent and meaning of those which are contained in the instrument.” Now, it is to be observed, that our courts are to take notice of a usage far more respectable than any of the customs above alluded to — a usage showing a common acceptation and understanding of the rules relating to growing croj>s, which appears rightly to interpret their spirit and purpose. “It has been sometimes said,” observed Lord Ellenborough, “communis error facit jus; but. *443 .1 say, communis opinio is evidence of what the law is — not where it is an opinion merely speculative and theoretical, floating in the minds of persons, but where it has been made the groundwork and substratum of practice.” Isherwood v. Oldknow, 3 M. & S. 396. This language has more fitness, perhaps, when the opinion of lawyers is that respected; but it is not without force when related to a popular construction of the law, which is not forbidden by its terms. Applied to the common understanding of the legal rules respecting growing crops, it seems entitled to regard. In our statute law, it is written, that “ the emblements or annual crojDs raised ■by labor, and whether severed or not from the land of the deceased at the time of his death, shall be assets in the hands of the executor ■or administrator, and shall be included in the inventory.” What .more natural than such an enactment in a community like ours? The law harmonizes with the common understanding; and that common understanding itself perfectly agrees with other rules of law on the same subject. In the excellent work of the late Mr. ■G-wynne, those rules are thus stated: “ Wheat, growing, is a chattel, and may be levied upon, under an execution against a defendant who is raising it on land of another. Such annual productions •or fruits of the earth as clover, timothy, spontaneous grasses, apples, pears, peaches, cherries, etc., are not personal property, but inci•-dents to the land. Everything produced by annual planting, cultivation, or labor, such as corn or potatoes, may be sold on a fi. fa., even when growing and immature. In such a case, the sheriff may 448] *wait until the wheat or other crop is ripe for harvest, then ■cut and carry it away, and sell it. He need not, however, wait, unless required to do so by statute, but may sell before the crop is matured or severed from the ground. Where growing corn is sold, it need not be removed by the purchaser until it is ripe. If left, it will not be liable to distress for rent (where distress is allowed), .unless it is left for an unreasonable time.' A purchaser oh execution of a growing crop, raised annually by labor and cultivation, .acquires the right and interest of the defendant in execution to the crop, with the right of ingress, egress, and regress, for the purpose of cutting and carrying it away. The purchaser may lawfully enter and remove the crop, provided it belonged, when sold, to the ■defendant in execution, although the land on which it was growing, .and the crops, were held fraudulently by another person. He does .not become a trespasser thereby; nor, by entering with the sheriff *444 to levy and sell, nor by'purchasing at the sale.” It is due the-learned and lamented author of the work from which these sentences are taken (Gwynne on Sheriffs, 220, 221), to keep in mind the subject of his treatise. For the purpose of a levy, growing-wheat is certainly, always a chattel; and there is no want of accuracy in what he has said, when his object and meaning are considered in the construction of his language. As we shall presently see, however, the rule is not quite as he has given it.
The language of C. J. Lane, in Cassilly v. Rhodes, 12 Ohio, 95, does not, at first, appear to clash with that just cited. He says: “ If the question were between the grantor and grantee, whether growing crops, annual or other, pass by a deed of sale, it would be of easy solution. They are not, technically, ‘emblements,’ but, ‘issues,’ or /profits,’ and part of the land, while in the owner’s hands; and, unless excepted, pass by the deed, because it is construed most strongly against him who makes it.” But his citation of authorities, 9 Cow. 39, 15 Mass. 159, would furnish a construction of his words such as would, if it must prevail, require a large modification of Mr. Gwynne’s language. *The latter writer [444 saysWheat growing is a chattel.” C. J. Lane calls it a “part of the land while in the owner’s hands.” The true rule is not fully given by either. To Mr. Gwynne’s rule, as well as to that of C. J. Lane, qualifications are to be annexed. Wheat growing is not always a chattel; nor even while the lands whereon it grows are held by the owner, is it always a part of the land. No question of reservation by parol was involved, or attempted to be raised in 12 Ohio. We are not called upon to overrule any decision, in saying, as wo do, that growing corn, or the like, may sometimes be a mere chattel, though not always so, and on the other hand, may be such mere chattel, although unsevered from the lands, while the latter are in the hands of the owner himself.
Thus regarding the legal character of growing corn, or the like, we feel authorized to declare, that a parol reservation of it may be proven, notwithstanding a subsequent deed between the same parties, in the common form. And in so declaring, we make no departure from the wholesome rule of evidence, which gives so much respect to the solemn, written contracts of parties.
A deed purports to convey the realty ? But what is the realty ?' Growing corn may be part of it, for some purposes, but it is generally to be considered as personalty. If the parties to a deed,, *445 either by words or their behavior, signify their understanding, that as between them it is personalty, the law will so regard it, and will respect their intention in the construction of the deed. "When the evidence of such understanding is produced, it is not to contradict the deed, for with that it is perfectly consistent; but it is to show that what in some instances would go with the lands as part of the realty, was, in that case, converted into personalty by the will of the parties, and thus to hold the deed to its true meaning and effect.
There was no error in admitting the evidence objected to in this case. '
The motion for new trial will be overruled, and judgment given for the defendant.